FILED

2011 JAN 20 P 3:03

U.S. DISTRICT COURT
BRIDGEPORT, CONN

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JOANNE FRATTURO,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | 311CV0113 PCD |
| **v.** | : | |
| **GARTNER, INC.,** | : | ***JURY TRIAL DEMANDED*** |
| **Defendant.** | : | **JANUARY 20, 2011** |

**COMPLAINT**

Plaintiff Joanne Fratturo, though her attorneys, Lucas Bagnell LLC, for her complaint against defendant Gartner, Inc., hereby alleges as follows:

***NATURE OF THE ACTION***

This is an action seeking damages and equitable relief for defendant's discrimination during her employment in violation of the Age Discrimination in Employment Act, the Americans with Disabilities Act, and Connecticut state law. Plaintiff is 59 years old and was employed by defendant for almost a decade. Her duties were reduced and she was summarily terminated and replaced by a substantially younger employee when her health deteriorated. She was informed she was part of a reduction in force, yet she was the sole employee terminated.

***PARTIES***

1. Plaintiff Joanne Fratturo ("Fratturo) is 59 years old and a citizen of the State of Connecticut, currently residing in Stamford, Connecticut.

2. Defendant Gartner, Inc. ("Gartner") is a Delaware corporation having its principal place of business in Stamford, Connecticut.

## *JURISDICTION,*
## ***VENUE AND ADMINISTRATIVE HISTORY***

3. Jurisdiction over the subject matter of this litigation exists under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. §1981a, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §621, *et seq.*, pursuant to 28 U.S.C. §1343. As to those claims not arising under federal law but clearly so related to the claims in this action within the original jurisdiction of this Court, jurisdiction exists under the doctrine of supplemental jurisdiction as codified in 28 U.S.C. §1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(1) and (2), as the unlawful conduct complained of herein took place within the District of Connecticut and both parties reside in the District.

5. Plaintiff timely filed administrative charges of discrimination and retaliation with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on or about March 8, 2010, and has received a Right to Sue letter from the EEOC dated November 10, 2010, as well as a Release to Sue from the CHRO dated November 15, 2010. Copies are attached hereto as Exhibits A and B, respectively.

## ***ALLEGATIONS***

6. Fratturo is currently 59 years of age and suffers from Chronic Obstructive Pulmonary Disease ("COPD"), a lung disease which makes it difficult for her to breathe and impacts her daily functioning. For example, Fratturo gets winded easily and has a difficult time

climbing stairs, lifting or moving heavy objects, and walking is negatively affected by pace and distance. Fratturo, until her termination by defendant Gartner, underwent therapy three times per week to assist her to cope with her medical condition.

7. Fratturo was first employed by defendant Gartner in August 2000. She began as a Coordinator supporting one of the Gartner Group Vice Presidents and his direct reports, including Regional Managers, Vice Presidents, Directors, and Consultants.

8. After holding the position of Coordinator for approximately three years, Fratturo was promoted to the position of Senior Coordinator.

9. In 2005, Fratturo shifted to a new position as a Senior Coordinator with Corporate Marketing. It was Fratturo's job to support assigned Directors, Vice Presidents, Senior Vice Presidents, and Group Vice Presidents. These assignments varied over time, but were always in the Marketing Department. Until the end of 2007, Fratturo was within the Corporate Marketing group of Gartner.

10. At all times relevant hereto, Fratturo performed her duties in a satisfactory or exemplary manner. As Senior Coordinator, it was her job to support assigned Senior Director, Marketing Products, and Local Briefings Specialists as needed. Her main responsibility was "Local Briefings Fulfillment." Part of her duties in this area was to create, format and produce related documents, ship appropriate collateral materials, including corporate banners, to each event. Gartner held on average up to 100 briefings a year throughout North & South America, including Canada. Fratturo successfully met her deadlines, including deadlines relating to

multiple briefings held the same day in different locations. She consistently received positive reviews and frequently received compliments on jobs well done. She received annual raises and bonuses in recognition of this good performance.

11. Toward the end of 2007, Gartner informed Fratturo that her job in Corporate Marketing was being eliminated. She was encouraged to transfer to a Senior Coordinator position in NA Sales & Marketing, which she was told was being merged with Corporate Marketing. Fratturo accepted the new position but then learned that both marketing groups were being placed under Global Sales Operations, and that her old position and duties were not being eliminated but instead were being taken over by Cindy Guillen, a significantly younger employee. Guillen had been transferred from a position as Executive Briefing Coordinator with NA Sales & Marketing, the group into which Fratturo was placed.

12. In 2008 Fratturo's health deteriorated and she took short-term disability of eight weeks, from June 11 to July 31. She became ill again later that year in December 2008, after which she was first diagnosed with COPD.

13. In 2009 Fratturo expanded her duties to include assisting with webinars, registering attendees as needed, monitoring the email box during sessions to assist in resolving connection issues and request for presentations.

14. As her duties were expanding to include webinars, Fratturo began therapy three days a week for eight weeks, then twice weekly. This required her to seek a minor modification of her work hours on therapy days. Instead of working 9:00 a.m. to 5:00 p.m. on the days she

received therapy Fratturo worked from 7:45 a.m. to 3:45 p.m., and logged-on at home. Fratturo often worked late on other days and frequently worked greater than 40 hours per week, though she never put in for overtime.

15. After her diagnosis and modified work schedule, despite the fact Fratturo was exceeding all requirements of her position, Fratuturo found that Gartner began staffing her group with younger and healthier associates, relegating her to various limited tasks, while the associates took over or were given tasks Fratturo either had performed or was capable of performing. Fratturo was never offered any of the new positions given to these associates, nor was the subject of her performing these new or transferred duties discussed with her. Instead these associates were simply assigned duties Fratturo was either performing or capable of performing.

16. By way of example, Victoria Romanchuk was brought in to develop webinars. She was in her forties. Beatrice Nieves, a contractor working on Local Briefings, was hired in the later half of 2009 as a Webinar Specialist. She was in her thirties. In late 2009 Kim Small, Audio Conference Coordinator, was brought in Fratturo's group as a Webinar Coordinator. She was in her twenties. Also brought in at about the same time as me was Zelda Strong, Local Briefing Specialist, who was in her thirties. The Team Leader was Cheryl Graham, younger than Fratturo by at least a decade.

17. In 2009, Fratturo suffered complications arising out of medication she was taking. Specifically, Fratturo lost significant weight due to digestive track problems. She weighed 94

pounds and looked ill. Fratturo spoke with her direct supervisor about her condition on a weekly basis. Fratturo's ability to do her job was questioned and she was asked if she was able to continue in her job. Fratturo assured her supervisor she could absolutely continue to do her job. Even though Fratturo did not miss any work, her supervisor suggested she might want to consider taking time off. Fratturo frequently received comments from her superiors and coworkers about her breathing, weight and complexion. Although Fratturo looked ill, she continued to perform all of her duties in a satisfactory manner.

18. After the close of 2009, in the second week of January 2010, Fratturo was summoned to a meeting with her supervisor and an individual from Human Resources and summarily told that her job was being "eliminated," that the duties she had been limited to could be done by others.

19. Ironically, it was Gartner that defined and limited Fratturo's duties, shifting them to younger, healthier workers. Indeed, Fratturo had seniority over many if not all these younger, healthier workers, was capable of performing the shifted duties, and had in fact previously performed many of those duties.

20. Fratturo was told her termination had nothing to do with her performance, but instead was part of a larger Gartner "reduction in force." However, Fratturo was given a proposed separation agreement that had attached to it an "Exhibit A" identifying all those Gartner employees considered for termination, and those Gartner had in fact chosen to terminate. Of the 62 employees identified for consideration for termination, only Fratturo and one other

employee (a recent re-hire who was approximately 46) were selected. The selected 46-year-old was subsequently retained by Gartner and, accordingly, the large "reduction in force" was limited to the termination of Fratturo.

21. Fratturo's duties were then given to, and entirely taken over by, her younger, healthy peers.

***FIRST COUNT***

***(29 U.S.C. §623(d)(ADEA)-Discrimination)***

22. Plaintiff hereby repeats and realleges paragraphs 1 to 21 as if more fully set forth herein.

23. Plaintiff was at all times relevant hereto an "employee" as that term is defined in 29 U.S.C. §630(f).

24. Defendant is an "employer" within the meaning of 29 U.S.C. §630(b).

25. At all relevant times hereto, defendant employed more than 20 persons.

26. Defendant discriminated against plaintiff on the basis of age in violation of the ADEA.

27. As a direct and proximate result of the defendant's conduct, plaintiff has suffered damages, including but not limited to substantial loss in earnings.

***SECOND COUNT***

***(Violation of 42 U.S.C. 12102 – Americans with Disabilities Act)***

28. Plaintiff hereby repeats and realleges paragraphs 6 through 21 as if more fully set forth herein.

29. Plaintiff is an individual with a "disability" as that term is defined in §3(2) of the Americans with Disabilities Act, 42 U.S.C. §12102. More specifically, because of her injuries,

plaintiff has: (a) a physical and/or neurological impairment that substantially limits one or more of her major life activities; and/or (b) is regarded by defendants as having such impairment.

30. Plaintiff is a qualified individual with a disability within the meaning of §101(8) of the Americans with Disabilities Act, 42 U.S.C. §12111(8), in that plaintiff is an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of her former position with defendant.

31. Defendant's treatment of plaintiff is in violation of §102 of the Americans with Disabilities Act, 42 U.S.C. §12112, which prohibits discrimination on the basis of disability.

32. Defendant has discriminated against plaintiff with respect to the terms, conditions, or provisions of employment because of plaintiff's disability.

33. Plaintiff was terminated because of her COPD, a condition that did not prevent plaintiff from performing the essential functions of her position (as she had done for the previous nine yearss) and which defendant was unwilling to accommodate in violation of the Americans with Disabilities Act.

34. Defendant's discriminatory conduct as to the plaintiff was taken with malice and with reckless indifference to the federally-protected rights of the plaintiff.

35. As a direct and proximate result of defendant's discrimination, plaintiff has been deprived of economic benefits, including but not limited to salary and fringe benefits.

36. As a result of defendant's treatment of plaintiff, plaintiff has suffered and will continue to suffer past and future economic, physical, and emotional harm.

***THIRD COUNT***

***(Connecticut General Statutes §46a-60(a) – Unlawful discrimination)***

37. Plaintiff hereby repeats and realleges paragraphs 1 to 36 as if more fully set forth herein.

38. Plaintiff was at all times relevant hereto an "employee" as that term is defined in Connecticut General Statutes §46a-51(9).

39. Defendants are each an "employer" as that term is defined in Connecticut General Statutes §46a-51(10).

40. At all relevant times hereto, defendants employed more than three persons.

41. Defendants' conduct, by and through their agents, in treating plaintiff in a manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of her age and disability in violation of C.G.S. §46a-60(a).

42. Defendants, in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite their knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of age in violation of C.G.S. §46a-60(a).

43. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

***PRAYER FOR RELIEF***

***WHEREFORE***, the plaintiff demands:

1. Compensatory damages, consequential damages, bonuses, and the value of all other employment benefits in an amount to be determined by the trier of fact, with interest from the date when said sums were due;

2. Liquidated damages under ADEA;

3. Punitive damages under the Americans with Disabilities Act as provided in 42 U.S.C. §1981(b).

4. Common law punitive damages;

5. Attorney's fees, prejudgment interest and costs; and

6. Any such additional and further relief which this Court may deem just and proper.

The plaintiffs demand a trial by jury on all counts.

**THE PLAINTIFF**
**JOANNE FRATTURO**

By: ______________________

Scott R. Lucas (ct00517)
Jeffrey S. Bagnell (ct18983)
Lucas Bagnell LLC
18 Kings Highway North
Westport, Connecticut 06880
(203) 227-8400
(203) 227-8402 (fax)
slucas@lucasbagnell.com
jbagnell@lucasbagnell.com

***Attorneys for Plaintiffs***

# EXHIBIT A

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Joanne Fratturo**
**16 Carroll St**
**Stamford, CT 06907**

From: **Boston Area Office**
**John F. Kennedy Fed Bldg**
**Government Ctr, Room 475**
**Boston, MA 02203**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2010-00685** | **Anne R. Giantonio, Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

[signature]

**Robert L. Sanders,**
**Area Office Director**

NOV 10 2010
*(Date Mailed)*

Enclosures(s)

cc: **GARTNER INC**
**56 Top Gallant Rd**
**Stamford, CT 06902**

**Scott R. Lucas**
**18 kings highway north**
**Westport, CT 06880**

# EXHIBIT B

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

**Joanne Fratturo**
COMPLAINANT

vs.

**DATE: November 15, 2010**

**Gartner, Inc.**
RESPONDENT

CHRO Case No. 1020312

EEOC No. 16A201000685

# RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 21 Grand Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met. The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 210 days. The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.

Very truly yours,

Robert J. Brothers, Jr.
Executive Director

cc: Complainant's Attorney: Attorney Scott R. Lucas
Respondent's Attorney: Attorney Eric Lubochinksi